FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

2014 MAY 16 A 11: 37

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

ORBIS OPERATIONS, LLC,

   Plaintiff,

v.

ARTHUR K. FRACKER,

   Defendants.

Civil Action No. 1:14cv567
LO/JFA

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, Orbis Operations LLC ("Orbis"), by counsel, alleges and complains of the Defendant, Arthur K. Fracker as follows:

### INTRODUCTION

1. Orbis seeks preliminary and permanent injunctive relief to enjoin Fracker from breaching the terms of his contract, misappropriating trade secrets, and tortiously interfering with the contractual relationships between Orbis and its current and former employees. Additionally, Orbis seeks damages from Fracker for injury caused by these contract and tort violations.

2. Orbis created a first-of-its-kind Advanced Situational Awareness Training ("ASAT") program designed to teach human behavioral and pattern recognition skills to combat soldiers that is intended to save lives through recognition of human threats.

3. Orbis has provided this training to multiple branches of the military, special forces units, and NATO.

4. From January 2, 2013 to April 13, 2014, Fracker performed services for Orbis, first as an independent contractor and subsequently as an employee. These services included teaching ASAT to U.S. Army soldiers.

5. While Fracker was employed with Orbis, Yorktown Systems Group ("Yorktown") contacted Fracker about potential employment in the same or a similar position despite knowledge that he was employed by Orbis.

6. Orbis notified Yorktown on April 16, 2014 that its employees were bound by non-solicitation, non-compete, and non-disclosure provisions.

7. These provisions prohibited any current or former Orbis employees from actions including accepting a job with direct competitors, soliciting other employees to leave Orbis, and working for any Orbis clients during employment with Orbis and for one year thereafter.

8. Yorktown and Fracker simply ignored Fracker's contractual obligations. In fact, Fracker continued to contact current and former Orbis employees, was included on Yorktown's bid for the same client and contract he had served for Orbis, and participated in Yorktown's hiring of former Orbis employees for the same or similar positions they had held at Orbis, in full knowledge that this solicitation and hiring violated Orbis' employment contracts.

9. On or about April 24, 2014, Yorktown included Fracker as part of its bid for work on a U.S. Army contract and subsequently hired him as an employee. By choosing to work for a direct competitor on the follow-on contract to an Orbis contract at the same military installation and on the same type of training for the exact same customer as he provided for Orbis, Fracker is in clear violation of contractual duties he owes to Orbis.

10. These contractual duties did not restrict Fracker from finding a variety of jobs in a variety of industries. Instead, they merely limited his ability to work for competitors delivering

the same service Fracker was trained to render by Orbis on Orbis' behalf, and from soliciting other Orbis employees, for a period of one year.

11. Fracker's new position includes providing similar training, developing ASAT courses for Yorktown, and positioning Yorktown to compete for other Situational Awareness Training courses on an enhanced basis. Fracker's knowledge of these areas and ability to deliver on his new job requirements depends on his use and misappropriation of Orbis' confidential and proprietary training methods, information, and trade secrets.

12. In his new position, Fracker is rendering virtually the same service to the same client as he did while at Orbis within one year of the time he left Orbis, despite clear non-solicitation language that he previously agreed to.

13. Moreover, Fracker has acted on behalf of Yorktown and directly solicited other employees to leave Orbis.

14. Fracker is scheduled to begin delivering ASAT courses for Yorktown on or about May 19, 2014. Yet he is still contractually bound to Orbis. His employment for a direct competitor will cause substantial and irreparable harm to Orbis as a result of breach of contract, tortious interference with contractual relationships, and actual and threatened misappropriation of trade secrets.

15. Through the use of narrowly tailored non-solicitation and non-disclosure contract language that prevents only employment by direct competitors rendering the same or similar services for a period of one year, and through early and frequent notice to Fracker and Yorktown of their legal obligations, Orbis has made a good faith effort to avoid this action. But the refusal of Fracker to heed all notice now requires a preliminary and permanent injunction to protect Orbis' legitimate economic, business, and property interests, safeguard the innovative and

proprietary information of Orbis, and prevent unjust enrichment of Fracker at the expense of Orbis.

## PARTIES

16. Plaintiff Orbis is a limited liability company ("LLC") organized under the laws of Delaware with its principal place of business in McLean, Virginia. Orbis is a defense contractor and offers training to U.S. military personnel. No members of the LLC are citizens of Georgia.

17. Defendant Fracker is a citizen of Georgia and currently resides in Lilburn, Georgia.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. There is complete diversity between the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.

19. This Court has personal jurisdiction over the parties. Fracker consented by contract to the jurisdiction of the Virginia state and federal courts and caused tortious injury within Virginia. Va. Code § 8.01-328.1. What is more, he consented to the exclusive jurisdiction of Virginia courts for any claims he might bring against Orbis. Declaration of Mr. L'Etoile ("Decl.") Ex. A, App. A at 3.

20. Venue is proper under 28 U.S.C. § 1391. Fracker has consented to venue and personal jurisdiction.

## FACTS

A. **Orbis' Unique Training Courses**

21. Orbis is a defense contractor and, more specifically, a provider of combat training services. It employs expert former military, federal law enforcement, and civilian law

enforcement officers and professionals. These experts train U.S. military units as well as international military units to recognize and analyze patterns of human behavior and to develop innovative, adaptive, and effective military responses.

22. Orbis is the expert and pioneer in Situational Awareness Training and was the first firm to build and provide a course focused exclusively on this training skillset to the U.S. Department of Defense.

23. ASAT not only teaches classroom theory but also includes capstone field training exercises in which trainees practice lessons from the classroom in simulated interactions with role players.

24. In 2010, the initial members of Orbis determined that three branches of the military—the Army, Navy, and Air Force—had no training to give soldiers the skills of Human Behavior Pattern Recognition & Analysis ("HBPR&A"). Only the Marines offered any similar training, but it was minimal and underemphasized important HBPR&A skills.

25. Believing that such training could save the lives of combat soldiers in increasingly dangerous and complex war zones, Orbis developed its proprietary Situational Awareness Training ("SAT") at its own expense and before any contracts or demand for such training existed.

26. Based on its knowledge of many challenging environments, from Detroit to Baghdad to Bagram, Orbis has developed sophisticated training programs that teach military units to understand human behavior and to develop situational awareness on the battlefield.

27. One of these SAT courses is ASAT. This course improves observational, human behavior recognition, and pattern analysis skills of combat soldiers. These skills enhance their ability to identify dangerous persons and situations before a destructive event occurs.

28. Orbis created and was the only provider of this training upon its creation. Since it was completed, Orbis has provided the training to diverse groups including U.S. Navy SEALs, the U.S. Army, and NATO.

29. Other training courses developed and taught by Orbis instructors include Insider Threat Situational Awareness Training ("IT-SAT"), Maritime Advanced Situational Awareness Training, Special Operation Forces Situational Awareness Training, Gatekeeper Situational Awareness Training, and Sexual Harassment / Assault Response and Prevention Situational Awareness Training.

30. Although new hires bring some experience in combat or law enforcement, they cannot become ASAT instructors until they complete a rigorous internal training program. Simply put, new hires cannot learn necessary instructional skills through manuals used for previous courses. Instead, Orbis requires all new hires to complete initial and sustainment training to develop proficiency in the complex subject areas.

31. Orbis provided approximately 180 hours of training and 100 hours of "ride-along" training to develop proficiency to deliver the ASAT course. This training relied on extensive first-hand experiences in war zones. Instructors gained knowledge and became experts in subjects such as biometrics, proxemics, atmospherics, heuristics, geographics, and kinesics.

32. Additionally, Orbis developed instructional and student manuals to supplement the extensive training and unique knowledge of its instructors.

33. After completing the first round of training to become an ASAT instructor, many Orbis instructors receive specialized training to deliver additional Situational Awareness Training areas of expertise. Fracker, for instance, received specialized training to become an IT-SAT instructor.

## B. Orbis' Contract with Fort Benning

34. In January 2012, Orbis received its first large-scale, multi-course ASAT contract to establish a training program at the U.S. Army's Maneuver Center of Excellence ("MCoE").

35. On December 13, 2013, after seeing the success of the program established by the MCoE, the Mission and Installation Contracting Command (MICC) of the Department of the Army at Fort Benning, Georgia posted a notice of intent to sole source a contract for ASAT to Orbis.

36. The rationale stated for this intention to sole source was that only one source—Orbis—was capable of performing the contract, and no other suppliers or servicers were capable of meeting the requirements of the MICC Fort Benning customer.

37. Orbis' most recent contract for ASAT Support Services at Fort Benning began in January 2014. The initial contract duration was three months, from January 11, 2014 to April 10, 2014. Subsequently, this contract was extended until May 10, 2014.

38. Beyond ASAT, Orbis has built on its proprietary training methodology and knowledge of HBPR&A to develop new training courses that have resulted in more contracts with additional branches of the military, in a variety of subject areas.

## C. Fracker's Relationship with Orbis

39. Beginning on January 12, 2013, Orbis has entered into a number of contracts with Fracker, first as an independent contractor and subsequently as an employee.

40. Fracker was first hired as an independent contractor on January 12, 2013. At that time, Orbis hired him to participate in its Train-the-Trainer course. This course was the first step to qualify Fracker to teach ASAT and other Orbis SAT courses such as IT-SAT.

7

41. Immediately upon completion of his training course, Fracker entered into another contract to provide IT-SAT and ASAT services for Orbis as an independent contractor on February 2, 2013.

42. The February 2, 2013 agreement contained a merger clause that superseded the terms of previous agreements. Decl. Ex. B at 7.

43. The February 2, 2013 agreement continued to govern the terms of Fracker's relationship with Orbis until on or about November 20, 2013, when Fracker signed a new employment agreement.

44. This new employment contract reflected Fracker's expanded role at Orbis. It included not only teaching ASAT courses but additional duties, such as instructional support, development of the Situational Awareness POI, and leading business development and outside sales efforts as directed. Decl. Ex. A. at 1-2.

45. The employment agreement contained no merger clause.

46. As a result of the lack of a merger clause, both the February 2, 2013 independent contractor agreement and the employment agreement (collectively, "Agreements") limit Fracker's ability to directly compete with Orbis or solicit Orbis' employees during employment and for one year after his departure.

47. The February 2, 2013 independent contractor agreement explicitly stated that knowledge of the training course theory, training techniques, training materials and business information was confidential, proprietary, and protected as a trade secret. Decl. Ex. B. at 3.

48. The independent contractor agreement also contained a non-solicitation clause, prohibiting solicitation or interference with any third party, business, contracts, or clients of Orbis during employment and for a period of one year thereafter. *Id.* at 3-4.

49. Fracker entered into an employment contract on or about November 20, 2013, ending his term as an independent contractor. The non-solicitation clause of the contracting agreement therefore prevents him from interfering with Orbis' relationship with any third parties, including employees in a contractual relationship with Orbis, until on or about November 20, 2014. *Id.* at 7 ("[T]his Agreement shall survive the conclusion and termination of this Agreement. . . .").

50. Upon becoming an employee, Fracker signed a new contract granting him additional responsibilities as well as creating new obligations should he decide to leave Orbis for a competitor.

51. Similar to the independent contractor agreement, the employment contract prohibited the use of any confidential or trade secret information to benefit Fracker or a third party. Decl. Ex. A, app. A at 1-2.

52. The employment contract also contained a limited non-compete provision that prevented Fracker from engaging in any business activity in competition with Orbis and its legitimate business interests during his employment and for a period of one year thereafter. *Id.*, App. A at 2.

53. Additionally, the employment contract prohibited Fracker from soliciting, servicing, or providing the same or similar products or services to any client of Orbis during employment or for one year thereafter. A "client" was defined to include any client during the one-year period preceding the date of termination of his employment. *Id.*, App. A at 2-3.

54. Fracker enjoyed the benefits of both Agreements, as he was paid for the services he provided to Orbis.

55. Fracker resigned voluntarily on or about April 13, 2014.

56. After his resignation, on or about April 14, 2014, Orbis sent a letter to Fracker reminding him of contractual obligations, including that the names and contact information of Orbis' ASAT instructors constitute Orbis confidential information.

## D. Yorktown's Solicitation of Orbis' Employees and ASAT Bid

57. Fracker has recently accepted a position with Yorktown.

58. Orbis only recently learned that Fracker has accepted a position with Yorktown.

59. Yorktown is a direct competitor of Orbis.

60. Upon information and belief, Yorktown or agents acting on its behalf first solicited Fracker's resume prior to April 14, 2014, while he was still employed by Orbis.

61. Upon information and belief, Fracker and at least one other person who had been employed by Orbis or acted as an independent contractor on its behalf rendering SAT services within the past year were included on Yorktown's response to the Army's Request for Task Order Proposal ("RTOP") for the follow-on contract to Orbis' ASAT course.

62. Fracker worked for Orbis on the previous iteration of the same contract, providing the same training to the U.S. Army's Maneuver Center of Excellence on behalf of Orbis.

63. Fracker intends to work as part of Yorktown's team to fulfill the contract for the same or similar ASAT courses for the U.S. Army at Fort Benning within one year of the termination of Fracker's employment contract and within one year of the end of his independent contractor agreement.

64. On April 16, 2014, Orbis notified Yorktown by email that Orbis employees related to ASAT courses were subject to non-compete and non-disclosure agreements.

65. The RTOP period for accepting bids ended on or about April 24, 2014 and Yorktown submitted a timely bid to the U.S. Government.

66. At the time Yorktown submitted its bid in response to the RTOP, Yorktown had knowledge of the non-compete and non-disclosure provisions of Fracker's and other Orbis employees' contracts with Orbis.

67. Beginning on or about April 18, Yorktown contacted other Orbis employees to encourage them to apply for positions at Yorktown.

68. On or about May 9, 2014, Fracker contacted other Orbis employees to encourage them to apply for positions at Yorktown.

## COUNT I

### Breach of Contract

69. Plaintiff incorporates herein the allegations in paragraphs 1 through 68 of this Complaint.

70. The Agreements between Fracker and Orbis were valid and binding contracts.

71. Orbis has fulfilled all of its contractual obligations under both Agreements.

72. Orbis is entitled to demand specific performance and money damages based on promises and covenants under the Agreements.

73. Fracker was an independent contractor for Orbis from January 2, 2013 to on or about November 20, 2013. He entered into multiple professional contracting agreements during this time.

74. The latest independent contractor agreement, which included a merger clause for previous agreements, remained relevant at the time of his resignation from Orbis, as described above.

11

75. As a condition of Fracker's employment with Orbis, he entered into an employment contract with Orbis. Fracker began service as an employee of Orbis on or about December 1, 2013.

76. The employment contract to which Fracker agreed to be bound contained a non-compete clause in Appendix A. This contract and the appendix were each signed by Fracker.

77. Under the non-compete clause of Appendix A, Fracker agreed that, during his employment with Orbis and for one year thereafter, he would not directly or indirectly engage in any business activity which is directly or indirectly in competition with the Company's markets or with any of the products or services being developed, marketed, distributed, planned, sold, or otherwise provided by Orbis. Decl. Ex. A, app. A at 2.

78. The independent contractor agreement also prohibited Fracker from interfering with any relationship with a client or customer of Orbis for a one-year period. Ex. B at 3-4.

79. Under the independent contractor agreement, Fracker could not be included on another company's bid for an Orbis customer or client during his employment or for a one-year period following employment. *Id.*

80. The Agreements also prevented Fracker from soliciting other employees of Orbis or soliciting or servicing clients of Orbis for one year after the end of each contract. Decl. Ex. A, app. A at 2-3; Decl. Ex. B. at 3-4. Fracker has violated these non-solicitation provisions.

81. The actions of Fracker described herein constitute a breach of these Agreements.

82. As a proximate result of such breaches, Orbis has been damaged in an amount in excess of seventy-five thousand dollars ($75,000) to be proven at trial.

83. In addition, Orbis has suffered, and is continuing to suffer, irreparable harm through the loss of its competitive advantage as a result of Fracker's breach of the non-

competition and non-solicitation clause of his Employment Agreement, for which Orbis lacks an adequate remedy at law.

84. Therefore, Orbis is entitled to temporary and permanent injunctive relief as set forth in the Prayer for Relief and also is entitled to a declaratory judgment that declares the right of Orbis' and Fracker's respective rights and obligations under the Agreements.

## COUNT II

### Tortious Interference with Contractual Relations

85. Plaintiff incorporates herein the allegations in paragraphs 1 through 84 of this Complaint.

86. Fracker interfered with the contractual relations of Orbis with other Orbis employees.

87. A valid contractual relationship existed between Orbis and several employees and independent contractors at the time these individuals were contacted by Fracker.

88. Despite having knowledge of the non-compete and non-solicitation clauses of these other employees and independent contractors, Fracker continued to solicit Orbis employees.

89. Fracker contacted these employees with the intent—and the knowledge—that such contact would interfere with these employees' contractual duties with Orbis.

90. These contractual duties barred other employees from working for a competitor providing the same or similar services for a period of one year after ending employment with Orbis.

91. The actions of Fracker described herein caused damage to Orbis.

92. As a proximate result of such breaches, Orbis has been damaged in an amount in excess of seventy-five thousand dollars ($75,000) to be proven at trial.

## COUNT III

### Actual or Threatened Misappropriation of Trade Secrets

93. Plaintiff incorporates herein the allegations in paragraphs 1 through 92 of this Complaint.

94. Fracker is in possession of trade secrets belonging to Orbis.

95. Fracker has begun to misappropriate protected employee information and has contacted employees using information he learned while employed with Orbis.

96. More alarming, any ASAT he provides on behalf of Yorktown requires appropriating and leveraging trade secrets through his new employment with a direct competitor of Orbis, in violation of the Virginia Uniform Trade Secrets Act. Va. Code § 59.1-336 *et seq.*

97. Orbis has no adequate remedy at law and the equitable intervention of this Court is required to protect its lawful interests.

98. Fracker gained knowledge of Orbis' confidential and proprietary materials while he was an independent contractor and then employee of Orbis. These materials include confidential training course content, training course theory, training techniques, marketing and technical plans, and confidential business material provided or developed during the course of Fracker's employment.

99. Only a small percentage of the confidential devices, methods, and techniques make their way into the instructional and student manuals produced by Orbis and the U.S. Army.

100. By leaving Orbis to work for a competitor at the same military installation where he would teach the same training course—Advanced Situational Awareness Training at Fort

Benning—Fracker will harm Orbis, leading to economic loss, loss of confidential property, and discouraging the development of the sort of innovative training created by Orbis.

101. Moreover, upon information and belief, Fracker's new position with Yorktown includes teaching duties as well as development of a program of instruction for the ASA course that rely upon application and use of proprietary Orbis information.

102. Fracker already has begun to misappropriate inside and proprietary knowledge of Orbis, when he allowed Yorktown to used him on its bid to fulfill its contract requirement to demonstrate expert knowledge of human behavior pattern recognition and analysis and advanced situational awareness methodology.

103. Should the requested injunctive relief not be granted, then Fracker will release Orbis' confidential methods, materials, and methodologies, and Orbis will be unable to maintain or reassert the confidentiality of its proprietary information and trade secrets at some later point and avoid the resultant competitive harms.

104. Injunctive relief is therefore an appropriate remedy.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, by counsel, respectfully requests that this Court enter judgment against the Defendant grant the following relief:

(a) a temporary and permanent injunction that: (i) enjoins Fracker from breaching the terms of the Agreements; (ii) enjoins from performing the same or similar job at Yorktown; (iii) enjoins Fracker from disclosing proprietary information of Orbis to any person or entity who is not an employee of Orbis; (iv) enjoins Fracker from tortiously interfering or soliciting any more Orbis employees or former employees still bound by their one-year non-compete clause;

(b) an award of damages in an amount in excess of seventy-five thousand dollars

15

($75,000) to be proven at trial against Defendants;

(c) an award of pre-judgment and post-judgment interest, costs and attorneys fees against Defendants; and

(d) an award of such other and further relief as the Court deems just and appropriate under the circumstances.

Respectfully submitted,

By: /s/ Craig G. Fansler

Craig G. Fansler (Va. Bar No. 86000)
Todd A. Bromberg (pro hac admission)
Nooree Lee (pro hac admission)
Wiley Rein LLP
1776 K Street NW
Washington, DC 20006
TEL: 202.719.7000
FAX: 202.719.7049
cfansler@wileyrein.com

*Counsel for Orbis Operations, LLC*

Dated: May 16, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on this 16 day of May, 2014, in accordance with Fed. R. Civ. P. 4(c) and Local Civil Rule 4, a copy of the foregoing document was served in person upon the following:

Arthur K. Fracker
3911 Windhurst Drive
Lilburn, GA 30047

W. Brad English
Maynard Cooper & Gail PC
655 Gallatin Street
PO Box 18668
Huntsville, AL 35801

                                                                            /s/
Craig G. Fansler (Va. Bar No. 86000)
WILEY REIN LLP
1776 K Street, N.W.
Washington, DC 20006
Telephone: (202) 719-7000
Fax: (202) 719-7049
Email: cfansler@wileyrein.com

*Counsel for Orbis Operations, LLC*